**TRAVIS et al. v. CENTRAL SURETY & INS. CORPORATION.**

**No. 9670.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 11, 1941.

Dillon Hartridge and J. Henry Taylor, both of Jacksonville, Fla., for appellants.

Harry T. Gray, of Jacksonville, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is a suit by the Central Surety & Insurance Corporation against its former agent, Beale Travis & Co., Inc., and Beale Travis, M. R. Blood, and Philip M. Travis, guarantors of the agency agreement, to recover insurance premiums collected by the agent and not remitted to the appellee. From an adverse judgment against them and the agent, the guarantors bring this appeal.

The agreement between the insurer and the agent was entered into on January 1, 1938. By its terms, the agent was required to pay balances owed to the company not later than seventy-five days after the end of the month for which the account was rendered. These appellants guaranteed the faithful performance of the contract, and bound themselves to pay, upon 'demand, any sums becoming and remaining due from the agent to the company.

On May 7, 1938, when the agent owed the appellee more than $5,000, the agency contract was cancelled. On May 20, 1938, appellee agreed to make a new agency contract with a successor corporation, Travis & Holmes, Inc., which was to acquire the good will and other assets of, and was to assume and agree to pay the debt owed to appellee by, the corporation succeeded. The new contract was guaranteed, in writing, by Beale Travis, J. E. Holmes, and M. R. Blood. These contracts, when reduced to writing and put in force, were dated back to January 1, 1938, the date of the original agreements.

Appellants acknowledge that the new contracts did not expressly release the obligors of the guaranty agreement, but they claim that the new agency agreement with the new guaranty superseded, replaced, and supplanted the original agreement under which their liability accrued, and by implication released them from any obligation under their guaranty. Further, they contend that the transfer of all the assets and good will of the original corporation to the successor released the original guarantors under the first corporation in the same manner that the release of the maker of a promissory note also precludes recovery from any of the endorsers thereon.

The precise question presented is whether or not the new contract constituted a novation which discharged the old debt owed by these appellants. The in-

·struments evidencing these transactions were completely silent as to the effect of the new arrangements upon the original guaranty contract and the indebtedness then owing thereunder. Therefore, novation must be determined by ascertaining the intent of the parties from the evidence in the case. Novation cannot be presumed; it must be shown to have been intended by a clear preponderance of the evidence, and upon the party urging it is cast the burden of making the required proof.[1]

Since the trial below resulted in a summary judgment, the necessary proof was made, if at all, in the pleadings and exhibits and the brief stipulation of facts. This evidence, we think, does not indicate that any intention was ever entertained to discharge these appellants from their accrued obligation.

The successor corporation assumed and agreed to pay the indebtedness of the old company as a part of the consideration for the conveyance to it of the property and good will of the old. The performance of this agreement was guaranteed by the successor guarantors. This was the entire and only agreement between the parties relating to the indebtedness here in suit. Giving the ordinary and usual meaning to the language of this contract, can it fairly be construed to take away a part of the security theretofore held by the insurer? Can it be interpreted so as to fix definite rights and liabilities between the maker and the endorser, when the latter specifically only guaranteed that the former would perform the obligations placed upon him by the contract in suit? Can it be so interpreted now, when the liability of the maker is res judicata? Can these appellants effectively claim to be the inferential beneficiaries of an agreement in which they are not mentioned, to which they are not parties, and by which their co-obligor is not released?

To ask these questions is to answer them. The only intention clearly ascertainable from the second agency contract and guaranty is that the appellee wanted and obtained additional security for the ma-

tured obligation. The rights and obligations of the guarantors flowed through the agent; it is therefore unreasonable to construe this instrument, silent as to both, by implication to release the guarantors while holding fast the agent.

 We think the evidence fails to establish by clear proof that the parties to these transactions intended any novation by which these appellants were released from their obligation as guarantors.[2] Having failed adequately to discharge this burden, the defense so interposed is without avail, and the judgment in favor of the appellee was correctly entered.

·Affirmed.

[1] Union Bank v. Stafford, 12 How. 327, 13 L.Ed. 1008; City National Bank of Huron, S. D. v. Fuller, 8 Cir., 52 F.2d 870, 79 A.L.R. 71; John Wanamaker, New York, Inc. v. Comfort, 5 Cir., 53 F. 2d 751; Fidelity-Philadelphia T. Co. v. Hale & Kilburn Corp., D.C., 24 F.Supp. 3; Hargadine-McKittrick Dry Goods Co. v. Goodman, 55 Fla. 361, 45 So. 995; Burge v. Maund, 66 Fla. 173, 63 So. 708.

[2] Cf. Griffin v. International Trust Co., 9 Cir., 161 F. 48; John Wanamaker, New York, Inc. v. Comfort, supra; Hargadine-McKittrick Dry Goods Co. v. Goodman, 55 Fla. 361, 45 So. 995; Burge v. Maund, 66 Fla. 173, 63 So. 708.